JUDGE GOFER
delivered the following as his dissenting OPINION.
I do not concur in so much of the opinion in this case as decides that the sureties in the administrator’s bond are not liable for the rent collected by him.
I concede that the administrator had no legal right to rent the real estate, or to receive the rent, but think he and his sureties have covenanted that he would pay whatever rent might come to his hands, by color of his office, from land descended from the intestate to his heirs at law.
Sections 48 and 53 of the act of 1797 (1 Statute Laws, 668, 669) made rent assets in the hands of an administrator under precisely the same circumstances and to the same extent as is done by sections 26 and 30 of article 2 of chapter 37 of the Revised Statutes, section 48 of the former act corresponding with section 30 of the latter, and section 53 with section 26. The statute of 1797 (1 S. L., page 663) prescribed the form of an administrator’s bond, but no mention was made therein of rent; yet it was never held, so far as I am aware, that the sureties of an administrator were not bound for any rent he may have received under sections 48 and 53; but it was repeatedly held that such sureties were not liable for other rents received by the administrator. Thus the law stood at the time of the .adoption of the Revised Statutes.
The General Assembly must be presumed to have been aware both of the provisions of the statute and the construction put upon it by this court. If there was no intention to change the liability of the sureties on the bond, it is not probable they would have changed the form of the bond required to be executed.
It was not necessary to make a change in order to render the sureties liable for rent received under sections 26 and 30 of article 2, chapter 37; their liability on a bond in the form prescribed by the act of 1797 was unquestioned.
*227 Why then insert a new covenant, or rather a new item, for which the sureties were to be liable, in the new form of a bond, unless the intention was to change the liability of those who might sign it? The reason is, to my mind, clear. It is a popular fact known to the legislature and to us all, that heirs ignorant of their rights often yielded control of real estate which had descended to them from the intestate, to the administrator, who either ignorantly, or through design, took advantage of their ignorance or helplessness and usurped control of the realty.
It was also known to the legislature that this court had repeatedly decided that the sureties of the administrator were not liable for rents. As the people were not all lawyers, and much the larger portion were ignorant of their rights in this respect, and many were from their tender years incapable of asserting their rights, there was an evil which needed to be remedied, and in my opinion it was to meet that very evil that the change was made in the form of the bond, and this case aptly illustrates the wisdom of such a change. Here were infants of very tender years who do not appear to have had a guardian, and no doubt their friends believed, as has always been common with the great mass of people, that the administrator had a legal right to rent the realty and receive the rent. These sureties were able to protect themselves, while those upon whom loss is now to fall, if it falls upon any one, were incapable from want of discretion to do so. I know one person’s ignorance of the law can not change the legal liability of another; but I refer to this to show that there was an evil, and that what the legislature has done is fairly susceptible of a construction which will remedy that evil, and that the action of the legislature was meaningless unless it means what I contend it does.
When the legislature has done an act or used a word to which no effect or meaning can be given, then, and not until *228 then, I am willing to say that the act done has no effect, and that the word used has no meaning.
Nor do I regard the argument made, that it is not to be presumed that the legislature intended to make so important a change in the law by inserting a single word in the form of bond prescribed, as militating against the position I have taken. We are to look to the bond in order to learn what the obligations of the sureties are, and when we find they have undertaken that the administrator will account for surplus rents we are not at liberty to say that such a bond imposes no greater obligations upon those who sign it, than they would have been under, if that clause had been omitted.
But it is asked, for what rent shall the sureties be liable ? I answer, for such rent as the administrator has received from realty which descended from his intestate to those asserting claim to rents, such rent as he received under color of his office, under claim of right to it as administrator.
The sureties in the bond sued on, which is the same as was prescribed by the Revised Statutes, covenanted that the administrator would “well and truly make proper distribution of any surplus money, effects, and rent which might come to his hands, or to any one for him, by color of his office.” The words in italics, like the word “ rent,” were not in the old form of bond. Do they also mean nothing? What does the phrase “by color of his office” mean? It means “an act unjustly done by the countenance of an office, being grounded upon corruption, to which the office is a shadow and color” (Wharton’s Law Dictionary, 157), “a pretense of official right to do an act made by one who has no such right” (Bouvier’s Law Dictionary, vol. 1, p. 293; 9 East, 364).
The clause in the bond then means that rent which an administrator receives by color of his office — that is, “ by countenance of his office ” — under “ pretense of official right,” but to which he has no right, shall be accounted for by his sure *229 ties. But under the construction given to the bond in this case the words “ by color of his office,” like the word “ rent,” must be rejected as meaningless, and the sureties of administrators can never be held liable for any money received by them to -which they were not entitled, although it be received' under claim or pretense of right or even under an honest belief of such right.
If it be asked whether sureties are to be held to. answer for money received by administrators to which they had no right as such, I answer that if it was claimed and received under color of office they have expressly covenanted to answer for it, and there is no injustice or hardship in holding them to the terms of their covenant.
If administrators claim and receive money on the ground that they have a right in that character to demand it, the sureties are bound under the form of bond executed by the sureties in this case, and they can not, when sued, go back and litigate the question whether their principal had strict legal right to receive the money. They are concluded by any settlement which concludes him, unless it be collusive; and the same principle should hold them bound by his claim and receipt of money as belonging to him as administrator.
For these reasons I dissent from the opinion of the majority of the court on this .point.
Since writing the foregoing, a petition for rehearing has been filed and attention called to the manuscript opinion in Harmon v. Ross's adm'r (Winter Term, 1869), in which the precise question now under consideration was before this court.
That was an action by an administrator on a note given to him for the rent of real estate which descended from the intestate to his heirs at law. The authority of the administrator to rent the land was denied, and it was also denied that the administrator at the time of renting had possession of the real *230 estate for the rent of which the note was given. That answer, this court decided, presented no defense to the action on the note, and after using the language first quoted in the opinion of the majority of the court in this case, in response to the ' petition for rehearing, the court went on to say: “ Besides, the administrator and his sureties are required by the form of his bond, prescribed by the statute, to covenant, among other things, that the administrator shall make a just and true account of all his acting and doings, and will well and truly make a proper distribution of any surplus money, effects, and rents which may come to his hands, or to the hands of any one for him by 'color of his office, to the persons entitled thereto. As therefore these rents, when collected, will have come to the hands of said administrator by color of his office, and he and his sureties will be liable on his administration bond (assuming, as we must do, that the county court required him to execute a bond in the prescribed form) to the distributees for the same, and having their remedy on the bond, they would at least be required to exhaust that remedy before they could look to appellants, even if they would in any event be responsible.”
If Ross’s administrator and his sureties should be sued on his bond by Ross’s distributees for the money which this court compelled Harmon to pay to him for rent, under the decision in that case they would be bound; but that decision has been overturned in this case; and if we follow the opinion of the majority of the court we must decide that the sureties are not responsible, and the rent may be lost, unless we will also hold that Harmon’s payment to the administrator, although adjudged by this court to be rightful, was unauthorized, and require him to pay again.
There is no danger that sureties may be held, under the rule for which I contend, to answer for moneys and effects which never belonged to the intestate, or for rents of land not descended from him. An administrator stands, as respects his *231 duties, in the room and stead of his intestate; and that to which the intestate, if living, would have no right — as, for instance, rent of land descended to his children from their mother — could under no circumstances go - into the hands of his administrator.
The administrator and his sureties not only covenant that he will administer the goods, chattels, and effects of the intestate, but they distinctly covenant that he will well and truly account for and make proper distribution of any surplus rent which may come to his hands.
I have tried to show that this covenant was insei’ted in the bond for a purpose, and that it was not necessary in order to render the administrator’s sureties liable for rent received by them from an estate owned by the intestate which under the statute passes to his personal representative; for they were liable, under the statute of 1797 and the bond required by that act, for rents received from such estate, upon a. covenant to well and truly administer the goods, chattels, and credits, and make distribution of the surplus, because such rents were the proceeds of a chattel interest in land, and were embraced in the word “ chattels;” and the only reason, in my opinion, for adding to the covenant the word “ rents ” was to hold the administrator’s sureties liable for something they would not have been liable for on a covenant in the old form.